174 Cal.App.4th 856 (2009)
ARDELL MOORE, Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.
No. B198550.
Court of Appeals of California, Second District, Division Three.
June 4, 2009.
*864 Michael P. Judge, Public Defender, Albert J. Menaster, Karen King and Jack T. Weedin, Deputy Public Defenders, for Petitioner.
Alan A. Abrams and Maheen Patel for American College of Forensic Psychiatry as Amicus Curiae on behalf of Petitioner.
Michael J. Aye as Amicus Curiae on behalf of Petitioner.
Norton & Melnik and Todd L. Melnik as Amici Curiae on behalf of Petitioner.
No appearance for Respondent.
Steve Cooley, District Attorney, Phyllis Asayama and Roberta Schwartz, Deputy District Attorneys, for Real Party in Interest.

OPINION
KLEIN, P. J.
Ardell Moore (Moore), the defendant in a petition by the People to commit him as a sexually violent predator under the Sexually Violent Predator Act (SVPA or the Act) (Welf. & Inst. Code, § 6600 et seq.),[1] seeks a writ of mandate directing respondent superior court to initiate a competency evaluation and to stay the SVPA proceeding until the issue of his mental competency can be determined.
We grant Moore's petition. In this case of first impression in California, we hold, as a matter of constitutional due process, that a defendant cannot be subjected to trial as an alleged sexually violent predator while mentally *865 incompetent. Our decision is based on the following factors: (1) the liberty interest at stake in an SVPA proceeding is significant; (2) proceeding with an SVPA trial against an incompetent defendant poses an unacceptable risk of an erroneous deprivation of liberty; (3) the governmental interest in protecting its citizens and treating sexually violent predators is not significantly burdened by providing for a competency determination in the SVPA context; and (4) a defendant's dignitary interest in presenting his side of the story is protected by ensuring the defendant is competent to stand trial. (People v. Allen (2008) 44 Cal.4th 843, 862-863, 869-870 [80 Cal.Rptr.3d 183, 187 P.3d 1018] (Allen).)[2]

FACTUAL AND PROCEDURAL BACKGROUND

1. Events leading up to the SVPA petition.

In 1980, Moore was convicted of forcible oral copulation. He was paroled in 1981.
In 1987, Moore was convicted of kidnapping, forcible rape and forcible rape in concert and was sentenced to 25 years in state prison.
Prior to Moore's scheduled release on parole, the Director of the State Department of Mental Health designated two mental health professionals to evaluate Moore. They determined Moore has a diagnosed mental disorder such that he remains likely to engage in predatory sexual violence without custody and appropriate treatment.
On March 8, 2005, the People filed a petition for Moore's commitment as a sexually violent predator. The People alleged Moore was convicted of three sexually violent offenses in 1980 and 1987, that he has a diagnosed mental disorder, is a danger to the health and safety of others, and is predatory.
Moore was arraigned on April 12, 2005, and the public defender was appointed as counsel. On August 18, 2005, a probable cause hearing was held, at which time the trial court found Moore was likely to engage in sexually violent behavior if released. (§ 6602.) Moore has remained in custody during subsequent delays.

2. The motion to stay the SVPA trial and to initiate competency proceedings.

In February 2007, Moore's counsel filed a motion for an order initiating a competency evaluation and a stay of the SVPA trial pending a competency *866 determination. The motion was supported by a letter from Vianne Castellano, Ph.D., who interviewed Moore on January 4 and January 11, 2007. Dr. Castellano opined "Mr. Moore is not presently competent to participate in the evaluation procedures or in the actual testimony relating to his upcoming [SVPA] hearing in March of 2007. He is neither able to understand the nature and the purpose of these proceedings nor is he able to cooperate in a rational manner with his counsel or the psychological evaluators."
The district attorney opposed the motion, contending there is no constitutional or statutory right to stay SVPA proceedings to litigate competency issues because an SVPA proceeding is civil in nature rather than punitive; accordingly, a defendant in an SVPA proceeding can be tried and committed even if that person is incompetent.
On April 9, 2007, the matter came on for hearing. Moore's counsel conceded the competency procedures of Penal Code section 1368 are inapplicable because an SVPA proceeding is civil in nature. However, Moore's counsel argued the court had the inherent power to fashion a judicial remedy to protect Moore's due process rights, pursuant to James H. v. Superior Court (1978) 77 Cal.App.3d 169 [143 Cal.Rptr. 398] (James H.)[3]
After hearing arguments of counsel, the trial court denied Moore's motion to stay the SVPA proceeding and to initiate a competency hearing. The trial court recognized it possesses the inherent power to fashion a remedy but declined to do so because it concluded due process does not require a competency determination in SVPA proceedings. The trial court reasoned that even assuming Moore is incompetent, due process is not offended by proceeding with the SVPA trial where the defendant is represented by an attorney.
The trial court also quoted with approval from a Massachusetts case, to wit: "We see no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent." (Com. v. Nieves (2006) 446 Mass. 583 [846 N.E.2d 379, 385] (Nieves).)

*867 3. Moore's petition for a writ of mandate.

On April 30, 2007, Moore filed the instant petition for writ of mandate. In the petition, Moore seeks the issuance of a peremptory writ directing the trial court to vacate its previous order and to enter a new and different order requiring the trial court to initiate competency proceedings.
On May 9, 2007, this court issued a stay of the SVPA proceedings, and requested the People to file a response to the petition. On July 3, 2007, this court issued an order to show cause. Following oral argument, we deferred submission in order to allow for supplemental briefing, including amicus curiae briefing, and to await the Supreme Court's recent decision in Allen, supra, 44 Cal.4th 843.

CONTENTIONS
Moore contends the trial court has the inherent power to determine the competency of an individual subject to prosecution under the SVPA; and the due process clauses of the United States and California Constitutions require that individuals subject to an SVPA commitment be competent.

DISCUSSION

1. Overview of statutory scheme.

(1) The SVPA was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society. (Allen, supra, 44 Cal.4th at p. 857.)
At the time the People filed the underlying petition to commit Moore as a sexually violent predator, in 2005, the SVPA defined a sexually violent predator as "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Former § 6600, subd. (a)(1), as amended by Stats. 2000, ch. 643, § 1.)[4]
(2) The "process for confining an individual pursuant to the SVPA begins when the Secretary of the Department of Corrections and Rehabilitation *868 determines that an individual in the custody of the department may be a sexually violent predator, and the secretary refers the individual to the State Department of Mental Health for an evaluation. If two evaluators concur that the individual meets the statutory criteria of a sexually violent predator, the Director of Mental Health shall request the county in which the person was convicted of the offense for which he or she is incarcerated to file a petition for commitment under the SVPA. (§ 6601.)" (Allen, supra, 44 Cal.4th at pp. 857-858.)
If "the trial court determines that the petition establishes `probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release,' the court shall order a trial to determine whether the person is a sexually violent predator. (§§ 6601.5, 6602.) The individual `shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports.' (§ 6603, subd. (a).) If the individual is indigent, the court shall appoint counsel and assist the individual in obtaining an expert evaluation and expert assistance at trial. (Ibid.) To secure the individual's commitment, the district attorney must prove beyond a reasonable doubt that the person is a sexually violent predator. (§ 6604.) When a jury decides the case, its verdict must be unanimous. (§ 6603, subd. (f).)" (Allen, supra, 44 Cal.4th at p. 858.)
At the time the People filed the underlying petition to commit Moore as a sexually violent predator, the SVPA provided: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health ...." (Former § 6604, as amended by Stats. 2000, ch. 420, § 3.)[5]

2. Because civil commitment involves a significant deprivation of liberty, a defendant in SVPA proceedings is entitled to due process protections; four relevant factors determine what process is due.

(3) Allen, a unanimous decision authored by the Chief Justice, clarifies the due process protections applicable to SVPA proceedings. There, the issue presented was whether a defendant in a sexually violent predator proceeding has a state or federal constitutional right to testify over the objection of his counsel. (Allen, supra, 44 Cal.4th at p. 848.) Although a defendant in a *869 criminal proceeding has a right to testify over the objection of counsel, because a proceeding to commit an individual as a sexually violent predator is civil in nature, the right of a criminal defendant to testify over the objection of counsel does not extend to an individual who is the subject of a civil commitment proceeding under the SVPA. (44 Cal.4th at p. 862.)
Allen continued, "Our conclusion that the right of a criminal defendant to testify over the objection of ... counsel does not extend to an individual who is the subject of a [civil] proceeding under the SVPA does not end our analysis. `Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP[A] proceeding is entitled to due process protections. (Foucha v. Louisiana (1992) 504 U.S. 71, 80 [118 L.Ed.2d 437, 112 S.Ct. 1780].)' ([People v.] Otto [(2001)] 26 Cal.4th [200,] 209 [109 Cal.Rptr.2d 327, 26 P.3d 1061]....)" (Allen, supra, 44 Cal.4th at p. 862; accord, People v. Thomas (1977) 19 Cal.3d 630, 638 [139 Cal.Rptr. 594, 566 P.2d 228] ["because involuntary commitment is incarceration against one's will regardless of whether it is called `civil' or `criminal' (In re Gault (1967) 387 U.S. 1, 50 [18 L.Ed.2d 527, 558, 87 S.Ct. 1428]), the choice of standard of proof implicates due process considerations which must be resolved by focusing not on the theoretical nature of the proceedings but rather on the actual consequences of commitment to the individual"].)
"`"Once it is determined that [the guarantee of] due process applies, the question remains what process is due." (Morrisey v. Brewer (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) We have identified four relevant factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official. ([In re] Malinda S. [(1990)] 51 Cal.3d [368,] 383 [272 Cal.Rptr. 787, 795 P.2d 1244].)' (Otto, supra, 26 Cal.4th at p. 210.)" (Allen, supra, 44 Cal.4th at pp. 862-863.)
Allen began with the private interests at stake. "As we noted in Otto, supra, 26 Cal.4th 200, `the private interests that will be affected by [a finding that the defendant continues to be a sexually violent predator] are the significant limitations on [the defendant's] liberty, the stigma of being classified as [a sexually violent predator], and subjection to unwanted treatment. [Citation.]' (Id. at p. 210.) The circumstance that a commitment is civil rather than criminal scarcely mitigates the severity of the restraint upon a defendant's *870 liberty. (Conservatorship of Roulet (1979) 23 Cal.3d 219, 223-227 [152 Cal.Rptr. 425, 590 P.2d 1].)" (Allen, supra, 44 Cal.4th at p. 863.)
Allen also observed, "[t]o the extent Proposition 83 has increased the burden upon liberty interests by requiring only one predicate offense and imposing an indeterminate term of commitment, it has increased the weight of the first factor." (Allen, supra, 44 Cal.4th at p. 863, fn. 15.) Thus, "the first factor weighs heavily in favor of providing all reasonable procedures to prevent the erroneous deprivation of liberty interests." (Id. at p. 863.)
Second, Allen considered "the risk, in the absence of a right to testify, of an erroneous finding that the defendant is a sexually violent predator and the probable value, in reducing this risk, of allowing him or her to testify over the objection of counsel." (Allen, supra, 44 Cal.4th at p. 863.) In approaching the issue, Allen "consider[ed] generally whether allowing a defendant in a proceeding under the SVPA to testify over the objection of his or her counsel may aid the defendant in preventing the erroneous deprivation of liberty interests, rather than whether the right would aid the particular defendant before us." (Allen, supra, 44 Cal.4th at p. 865, italics added.) Absent "the objection of defendant's counsel, defendant would have been permitted to testify to the extent his testimony was admissible and sufficiently relevant.... [T]he defendant's participation in the proceedings, through pretrial interviews and testimony at trial, generally enhances the reliability of the outcome. Moreover, ... if critical information, such as the details surrounding the commission of the predicate offenses, is questionable, `a significant portion of the foundation of the resulting [sexually violent predator] finding is suspect.' [Citation.] Because the testimony of a defendant typically will concern his or her conduct, this testimony may relate to information that is critical to the experts' testimony. Attorneys are not infallible in appraising their clients and in assessing the impression a client's testimony may have on a jury, or in evaluating the credibility of other witnesses. In some cases, the defendant's testimony may raise a reasonable doubt concerning the facts underlying the experts' opinions. Accordingly, in every case there exists a risk that allowing counsel to preclude the defendant from testifying will lead to an erroneous deprivation of rights. Guaranteeing the defendant a right to testify, even over counsel's objection, will mitigate this risk. The potential consequence of the defendant's testimony being harmful to his or her case does not justify a rule that would bar a defendant from testifying absent the concurrence of his or her counsel. For these reasons, we conclude the second factor weighs in favor of allowing the defendant to testify over the objection of counsel." (Allen, supra, 44 Cal.4th at p. 865-866, citations & fn. omitted, italics added.)
Third, Allen "consider[ed] `the government's interest, including the function involved and the fiscal and administrative burdens that the additional or *871 substitute procedural requirement would entail.' [Citation.] The government has a strong interest in protecting the public from sexually violent predators, and in providing treatment to these individuals. [Citations.] Because the defendant's participation in the proceedings through his or her testimony at trial generally enhances the reliability of the outcome, the recognition of a right to testify over the objection of counsel may serve the government's interest in securing an accurate factual determination concerning the defendant's status as a sexually violent predator." (Allen, supra, 44 Cal.4th at p. 866.)
Allen observed, "[t]he fiscal and administrative burdens associated with a right to testify over counsel's objection are de minimis.... [T]he defendant generally has a right to testify in such proceedings, subject to the rules of evidence and procedure. Therefore, recognizing a right of the defendant to testify against the advice of counsel will lengthen the proceedings only in that subset of cases in which the defendant's counsel determines not to call the defendant to testify and the defendant decides to reject counsel's advice and insists upon his or her right to testify. The added expense of receiving the defendant's testimony in those relatively few cases is of course no reason to deny the defendant a right to testify." (Allen, supra, 44 Cal.4th at p. 867.)
Finally, Allen "consider[ed] `the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official. [Citation.]'" (Allen, supra, 44 Cal.4th at p. 868.)
Allen reasoned: "Because a defendant in a proceeding under the SVPA has no right to represent himself or herself and no privilege against self-incrimination, denial of a right to testify over the objection of counsel might relegate the defendant to the role of a mere spectator, with no power to attempt to affect the outcome. The defendant might be both forced to testify as to matters the prosecution seeks to establish, and prevented from testifying as to matters the defendant seeks to establish, or might be ignored. The circumstance that the defendant may fare better by remaining silent at trial does not negate the dignitary interest in being heard. The government has no interest in assuming a paternal role to prevent a defendant from pursuing a strategically misguided path in a proceeding under the SVPA. `The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." [Citation.]' (Mathews v. Eldridge [(1976)] 424 U.S. [319,] 333 [47 L.Ed.2d 18, 96 S.Ct. 893].) Because denial of a right to testify over the objection of counsel would impair the defendant's ability to be heard, we conclude that the fourth factor weighs in favor of allowing the defendant to testify against the advice of counsel." (Allen, supra, 44 Cal.4th at p. 869, italics added.)
*872 (4) Allen concluded: "In summary, (1) the private interests at stake in an SVPA proceeding are significant; (2) there is a risk counsel may misjudge the effect the defendant's testimony will have upon the finder of fact, and allowing the defendant to testify over the objection of counsel will mitigate the risk of an erroneous deprivation of the defendant's liberty interests that might result from counsel's misjudgment; (3) as a general matter, the government's interest in protecting its citizens and treating sexually violent predators pursuant to an efficient procedure is not significantly burdened by allowing such testimonyand, in any event, this burden would not justify deprivation of the defendant's right to testify; and (4) the defendant's dignitary interest in presenting his or her side of the story is protected by allowing the defendant to testify despite counsel's judgment that such testimony will be detrimental. Therefore, we conclude that the balancing test set forth above establishes that the defendant in a sexually violent predator proceeding has a right under the due process clauses of the federal and state Constitutions to testify, in accordance with the rules of evidence and procedure, over the objection of counsel." (Allen, supra, 44 Cal.4th at pp. 869-870.)

3. Application of the four Allen factors ineluctably leads to the conclusion a defendant in SVPA proceedings has a due process right not to be subjected to trial while incompetent.

(5) It has long been established that a mentally incompetent criminal defendant cannot be tried while incompetent.[6] However, the right of a criminal defendant not to stand trial while incompetent does not compel the conclusion that a defendant in a civil SVPA proceeding has a due process right not to be subjected to trial while incompetent. Rather, pursuant to the four factors articulated in Allen, we examine whether due process prohibits a defendant from standing trial as an alleged sexually violent predator while incompetent.

*873 a. Defendant's liberty interest.

(6) We begin with the private interests at stake. The private interests that will be affected by a finding a defendant is a sexually violent predator are the significant limitations on the defendant's liberty, the stigma of being classified as a sexually violent predator, and subjection to unwanted treatment. (Allen, supra, 44 Cal.4th at p. 863.) Irrespective of the fact a commitment under the SVPA is labeled civil rather than criminal, the defendant's liberty is severely curtailed. (44 Cal.4th at p. 863.) Proposition 83 has magnified the liberty interest by requiring only one predicate offense and imposing an indeterminate term of commitment. (44 Cal.4th at p. 863, fn. 15.) Thus, here as in Allen, "the first factor weighs heavily in favor of providing all reasonable procedures to prevent the erroneous deprivation of liberty interests." (Id. at p. 863.)

b. Risk of proceeding to trial with mentally incompetent defendant and benefit of additional procedural safeguard.

(7) Second, we consider the risk, in the absence of a right to be competent in SVPA proceedings, and the probable value of the additional procedural safeguard of a competency evaluation before an SVPA trial. (Allen, supra, 44 Cal.4th at p. 863.) The inquiry is whether the proposed procedural safeguard may generally "aid the defendant in preventing the erroneous deprivation of liberty interests, rather than whether the right would aid the particular defendant before us." (Id. at p. 865, italics added.)
By way of background, the presentation at an SVPA trial occurs in several phases. First, there are the prior convictions,[7] as well as prior unadjudicated charges, unadjudicated arrests and other areas of misbehavior or misconduct, including prison conduct. Next, there is scrutiny of the underlying psychological diagnoses, based on the defendant's history and interviews with state psychologists. The third general area pertains to treatment, both prior to SVPA proceedings and thereafter, the defendant's testimony regarding his prior conduct, his attempts to better himself, his relapse prevention plan, plans upon release and his amenability to treatment on a voluntary basis. Participation by a defendant in each of these areas may be crucial.
*874 (8) In the initial phase of the trial, the People present foundational evidence of the prior sex offenses in detail, so that the jury knows the facts on which the experts are basing their opinions. When the defendant is called to testify, the facts are reiterated and the defendant is questioned by the People to admit all the details and asked if he was aroused by his conduct. Additionally, issues may arise with an incompetent defendant when the People introduce evidence of prior unadjudicated charges and arrests that have never been tested in court and are recorded solely in crime reports.[8] Such evidence may be left unconfronted by an incompetent defendant and by defense counsel, who may have no way of knowing whether the information is true.
The next phase of the trial pertains to the presence of a "[d]iagnosed mental disorder," that would qualify a defendant for commitment as a sexually violent predator. (§ 6600, subd. (c).)[9] An incompetent defendant will have no opportunity to discuss his prior behavior and motivating reasons for such behavior with the state's evaluator or with a defense expert, or be able to explain to a jury why the state expert's rationale for the diagnosis and volitional impairment is not justified. A defendant who is incompetent is at a great disadvantage, as he cannot meaningfully testify in his own behalf, cannot cooperate with his own counsel, nor assist his defense experts in understanding the basis for his behavior or provide evidence to rebut an evaluator's potentially erroneous conclusion.
The subsequent phase of the trial pertains to treatment, both before and after commitment. An incompetent defendant may be unable to share his *875 knowledge and understanding of what he has learned, which is important to the evaulators' assessment to determine if the defendant is "likely" to reoffend and to engage in sexually violent criminal behavior. (§ 6600, subd. (a)(1).) Further, when a defendant testifies, what he has learned and how he will conduct himself in the future will be of keen interest to the jury and will weigh heavily on a decision to commit him as a sexually violent predator.
For these reasons, proceeding with an SVPA trial against an incompetent defendant poses an unacceptable risk of an erroneous deprivation of liberty. The second factor weighs in favor of the added procedural safeguard of a pretrial inquiry into defendant's competence to stand trial.
We recognize Florida has taken a somewhat different approach. There, the right to be competent in a sexually violent predator proceeding hinges on the nature of the state's evidentiary showing. In those cases in which the state's experts choose to rely on unchallenged hearsay to establish a defendant's prior uncharged bad acts, the defendant has a right to be competent so that he can exercise his due process right to challenge the facts underlying that hearsay evidence. (Branch, supra, 890 So.2d at p. 328.)
(9) However, in Allen, our Supreme Court rejected such a case-by-case approach. To reiterate, Allen "consider[ed] generally whether allowing a defendant in a proceeding under the SVPA to testify over the objection of his or her counsel may aid the defendant in preventing the erroneous deprivation of liberty interests, rather than whether the right would aid the particular defendant before us." (Allen, supra, 44 Cal.4th at p. 865, italics added.)
Further, Allen recognized "the defendant's participation in the proceedings, through pretrial interviews and testimony at trial, generally enhances the reliability of the outcome. ... [I]f critical information, such as the details surrounding the commission of the predicate offenses, is questionable, `a significant portion of the foundation of the resulting [sexually violent predator] finding is suspect.' [Citation.] Because the testimony of a defendant typically will concern his or her conduct, this testimony may relate to information that is critical to the experts' testimony. Attorneys are not infallible in appraising their clients and in assessing the impression a client's testimony may have on a jury, or in evaluating the credibility of other witnesses. In some cases, the defendant's testimony may raise a reasonable doubt concerning the facts underlying the experts' opinions. Accordingly, in every case there exists a risk that allowing counsel to preclude the defendant from testifying will lead to an erroneous deprivation of rights. Guaranteeing the defendant a right to testify, even over counsel's objection, will mitigate this risk." (Allen, supra, 44 Cal.4th at pp. 865-866, italics added, fn. omitted.)
*876 Allen's discussion with respect to the crucial role of a defendant's testimony in an SVPA proceeding illustrates the need for an SVPA defendant to be competent to consult with counsel and to participate in the proceeding. For example, a defendant's testimony may call into question the foundational details of the circumstances surrounding the commission of the predicate offenses, and may raise doubt concerning the facts underlying the experts' opinions. (Allen, supra, 44 Cal.4th at p. 866.) The Florida approach requires defense counsel to anticipate in advance the extent of a client's participation at trial. However, "[a]ttorneys are not infallible in appraising their clients and in assessing the impression a client's testimony may have on a jury, or in evaluating the credibility of other witnesses." (Ibid.) Therefore, proceeding to trial with an incompetent defendant poses a risk of an "erroneous deprivation of rights." (Ibid.)
Further, Allen recognizes that "in every case" (Allen, supra, 44 Cal.4th at p. 866), an SVPA defendant has the right, as a matter of constitutional due process, to testify and to present his side of the story (44 Cal.4th at pp. 869-870). Mental competence is a prerequisite to the exercise of that due process right. Absent mental competence, a defendant cannot testify or participate meaningfully in the SVPA proceeding.
For these reasons, the second factor in Allen weighs in favor of providing for a pretrial inquiry into defendant's competence to stand trial in an SVPA proceeding.

c. Fiscal and administrative burden of the additional procedural safeguard.

Next, we consider the government's interest and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (Allen, supra, 44 Cal.4th at p. 866.)
(10) The government has a strong interest in protecting the public from sexually violent predators, and in providing treatment to these individuals, but the government also has an "interest in securing an accurate factual determination concerning the defendant's status as a sexually violent predator." (Allen, supra, 44 Cal.4th at p. 866.)
The fiscal and administrative burden associated with a competency determination before an SVPA trial is not significant, and in any event would not justify deprivation of a defendant's right to be competent and to participate in the SVPA proceeding. (See Allen, supra, 44 Cal.4th at pp. 867, 869.) Recognizing a defendant's right to a competency determination will lengthen the proceedings "only in that subset of cases" (id. at p. 867) in which defense counsel or the court has reason to believe the defendant may be incompetent to stand trial.
*877 Further, assuming arguendo a defendant is found to be incompetent to stand trial, the defendant would remain confined in a state hospital or other treatment facility that will promote the defendant's restoration to mental competence. (See discussion, pt. 5, post.) Therefore, irrespective of whether a defendant is civilly committed as a sexually violent predator, or committed for treatment pending restoration to competence, the fiscal burden to the state remains essentially the same.
Accordingly, the government's interest would not be significantly burdened by the additional procedural safeguard of a competency determination in SVPA proceedings.

d. Defendant's dignitary interest.

(11) Finally, we consider the dignitary interest in ensuring that an incompetent defendant not be subjected to trial under the SVPA. A mentally incompetent defendant may be unable to testify or to consult with counsel. Such a defendant would lack the ability to discuss his prior conduct, dispute facts, discuss future plans and relapse prevention techniques, challenge hearsay evidence or erroneous factual assumptions of the prosecution's expert witnesses. In short, the defendant would be "relegate[d] ... to the role of a mere spectator, with no power to affect the outcome." (Allen, supra, 44 Cal.4th at p. 869, italics added.)
We conclude a defendant's dignitary interest can be protected only if the defendant is mentally competent, so that the defendant is duly "inform[ed]... of the nature, grounds, and consequences of the action [and is able] to present [his] side of the story" to the trier of fact. (Allen, supra, 44 Cal.4th at p. 862.)

e. Conclusion.

(12) In sum, (1) the liberty interest at stake in an SVPA proceeding is significant; (2) proceeding with an SVPA trial against an incompetent defendant poses an unacceptable risk of an erroneous deprivation of liberty; (3) the governmental interest in protecting its citizens and treating sexually violent predators is not significantly burdened by providing for a competency determination in the SVPA context; and (4) a defendant's dignitary interest in presenting his side of the story is protected by ensuring the defendant is competent to stand trial.

4. Contrary authority in other jurisdictions, without benefit of Allen's sensitivity to due process concerns, is of no assistance.

Courts in four statesMassachusetts, Iowa, Missouri and Texaswhich have been confronted with the same issue as this court all have concluded a *878 defendant is not entitled to a competency determination before being tried as an alleged sexually violent predator.[10] Those decisions are predicated on the nominally civil nature of sexually violent predator proceedings. However, Allen expressly rejected the civil/criminal dichotomy as a basis for disposing of an alleged sexually violent predator's constitutional claims. (Allen, supra, 44 Cal.4th at p. 862.) Allen reflects the nominally civil nomenclature is only the beginning of the constitutional analysis.
Briefly, in Nieves, cited by the trial court herein, the Massachusetts Supreme Judicial Court rejected the contention that trial of an alleged incompetent defendant as a sexual predator would violate due process. (Nieves, supra, 846 N.E.2d at p. 385.)
In In re Detention of Cubbage (Iowa 2003) 671 N.W.2d 442, the Iowa Supreme Court concluded a defendant does not have a constitutional right to be competent during the course of sexually violent predator proceedings, emphasizing "the SVPA involves the potential civil commitment of a respondent alleged to be a sexually violent predator." (Id. at p. 447.)
Similarly, in State ex rel. Nixon v. Kinder (Mo. 2003) 129 S.W.3d 5, the Missouri Court of Appeals held due process does not require a defendant be competent to stand trial as a sexually violent predator, in that "[c]ivil commitment for sexually violent predator treatment shares no parallel with the determination of lack of competency ... in criminal trials." (Id. at pp. 9-10, italics added.)
Likewise, in In re Commitment of Fisher (Tex. 2005) 164 S.W.3d 637, certiorari denied, sub nom. Fisher v. Texas (2005) 546 U.S. 938 [163 L.Ed.2d 326, 126 S.Ct. 428] the Texas Supreme Court held that because the sexually violent predator statute is civil rather than criminal in nature, one who may be incompetent to stand trial on criminal charges can nonetheless be civilly committed as a sexually violent predator. (In re Commitment of Fisher, at p. 653.)
(13) In Allen, our Supreme Court recognized: "The circumstance that a commitment is civil rather than criminal scarcely mitigates the severity of the restraint upon the defendant's liberty. [Citation.]" (Allen, supra, 44 Cal.4th at p. 863.) Allen prescribed a four-part template for determining what due process protections are applicable in California SVPA proceedings. (44 Cal.4th at pp. 862-863.) Therefore, out-of-state decisions which are grounded on the *879 premise that sexually violent predator commitment proceedings are deemed civil in nature are of no assistance here.

5. Courts have inherent power to fill the gap in the SVPA statutory scheme by providing for a competency determination in order to effectuate the Act so as to safeguard public safety and at the same time satisfy due process concerns.

(14) Given the dictates of Allen, supra, 44 Cal.4th 843, we are compelled to conclude a defendant in an SVPA proceeding has a constitutional due process right to a competency determination before an SVPA trial. Unfortunately, the Act (§ 6600 et seq.), unlike the Penal Code (Pen. Code, § 1367 et seq.),[11] lacks any procedures for an inquiry into the mental competence of a defendant. Without any provision to ensure a defendant's right to be competent in SVPA proceedings, the Act would be unconstitutional as applied to Moore.
Notwithstanding the SVPA's lack of a competency provision, this court has the power to fashion a remedy. It is "beyond dispute that `Courts have inherent power, as well as power under section 187 of the Code of Civil Procedure,[[12]] to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council.'" (Citizens Utilities Co. v. Superior Court (1963) 59 Cal.2d 805, 812-813 [31 Cal.Rptr. 316, 382 P.2d 356], fn. omitted.)
*880 James H. is on point. There, the court held due process demanded that a minor be afforded a competency hearing to determine whether he was a fit subject for the juvenile court, but "the authors of the Juvenile Court Law ... failed to provide any proceedings comparable to Penal Code sections 1367-1368 ...." (James H., supra, 77 Cal.App.3d at pp. 174-175.) Due to the need to protect the minor's right to due process, the James H. court invoked its inherent power, codified in Code of Civil Procedure section 187, to formulate a competency procedure. (James H., at pp. 175-176.) James H. stated: "As the Supreme Court said in People v. Jordan [(1884)] 65 Cal. 644 at page 646 [4 P. 683], `[i]n the absence of any rules of practice enacted by the legislative authority, it is competent for the courts of this State to establish an entire Code of procedure in civil cases, and an entire system of procedure in criminal cases, ...' (See also Citizens Utilities Co. v. Superior Court[, supra, 59 Cal.2d at p.] 813 ..., recognizing the inherent power of courts to adopt `"any suitable method of practice ... if the procedure is not specified by statute or by rules adopted by the Judicial Council."')" (James H., supra, 77 Cal.App.3d at p. 175; see, e.g., Warren v. Schecter (1997) 57 Cal.App.4th 1189, 1199 [67 Cal.Rptr.2d 573] [Code Civ. Proc., § 36 only provided for trial setting preference based on medical condition; this court exercised its inherent power to grant calendar preference on appeal].)
We are mindful the provisions of Penal Code section 1367 et seq., relating to the determination of competence to stand trial, "are expressly limited in their application to criminal proceedings which occur prior to judgment and sentence." (Juarez v. Superior Court (1987) 196 Cal.App.3d 928, 931 [242 Cal.Rptr. 192]; accord, People v. Angeletakis (1992) 5 Cal.App.4th 963, 967 [7 Cal.Rptr.2d 377] (Angeletakis).)[13] However, the numerous commonalities between SVPA proceedings and criminal prosecutions warrant resort to the Penal Code for guidance.
An SVPA commitment "unquestionably involves a deprivation of liberty, and a lasting stigma...." (People v. Hurtado (2002) 28 Cal.4th 1179, 1194 [124 Cal.Rptr.2d 186, 52 P.3d 116] (Hurtado).) Civil "`commitment to a mental hospital, despite its civil label, threatens a person's liberty and dignity on as massive a scale as that traditionally associated with criminal prosecutions.'" (Id. at p. 1193, italics added.) "Although the SVPA is a civil proceeding, its procedures have many of the trappings of a criminal proceeding. The probable cause hearing ... (§ 6602) is one example. In addition, the *881 defendant is entitled to appointed counsel (§ 6603, subd. (a)), the trier of fact must find the defendant to be a sexually violent predator beyond a reasonable doubt (§ 6604), and a jury verdict must be unanimous (§ 6603, subd. (d) [now subd. (f)]). [¶] In sum, proceedings under the SVPA, in common with proceedings under other civil commitment statutes, are civil proceedings with consequences comparable to a criminal convictioninvoluntary commitment, often for an indefinite or renewable period,[14] with associated damage to the defendant's name and reputation." (Id. at p. 1192, some italics added.)[15], [16]
(15) In view of the numerous similarities between proceedings under the SVPA and criminal prosecutions, we deem this an appropriate case for the exercise of our inherent power to look to Penal Code section 1367 et seq. in order to fill the gap in the SVPA, so as to enable the Act to function in a constitutional manner. We do so in order to preserve the constitutionality of the SVPA by securing the due process right of an alleged sexually violent predator to be competent at trial, and at the same time safeguarding public safety by preventing the premature release of a potentially dangerous individual.
Therefore, on remand the trial court is directed to conduct a hearing into Moore's competence to stand trial as an alleged sexually violent predator. In the event the trial court determines Moore is not presently competent to stand trial, the court shall order Moore held in a state hospital for the care and treatment of the mentally disordered until such time as he is restored to competence.

*882 DISPOSITION
The order to show cause is discharged. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent superior court to: vacate its order denying Moore's motion to stay the SVPA proceeding and to initiate a competency hearing; and to conduct further proceedings not inconsistent with this opinion.
Croskey, J., and Aldrich, J., concurred.
NOTES
[1] Statutory references are to the Welfare and Institutions Code except where otherwise designated.
[2] Notwithstanding references herein to the masculine singular pronouns his or he, when not referring specifically to Moore, we use such terms generically to refer to either gender.
[3] In James H., a petition was filed alleging a minor, age 17, had committed forcible rape. (James H., supra, 77 Cal.App.3d at p. 172.) James H. held a minor is entitled, as a matter of due process, to a competency hearing in a proceeding to determine whether the minor is a fit and proper subject for the juvenile court. However, the juvenile statutory scheme failed to provide for a hearing comparable to Penal Code sections 1367 through 1368. (James H., at pp. 174-175.) Having recognized a competency hearing was required by due process, James H. invoked the inherent power of the court to hold such a hearing, relying on the court's "inherent powers to formulate procedures which have not yet attained legislative approval." (James H., at pp. 175-176.)
[4] The SVPA was amended in various respects by Proposition 83, The Sexual Predator Punishment and Control Act: Jessica's Law (hereinafter, Proposition 83), which was approved by the voters at the General Election in November 2006. Proposition 83, inter alia, amended the definition of a sexually violent predator to include individuals who have been convicted of a sexually violent offense against one or more victims. (§ 6600, subd. (a)(1).)
[5] Proposition 83 amended section 6604 to provide that "the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement...." (§ 6604, italics added.)
[6] Penal Code section 1368 has been on the books since 1872. It was derived from an 1851 California statute, Criminal Practice Act section 584 (Stats. 1851, ch. 29, pp. 212, 277), which read: "When an indictment is called for trial, or upon conviction, the defendant is brought up for judgment, if a doubt shall arise as to the sanity of the defendant, the Court shall order the question to be submitted to the regular jury, or may order a jury to be summoned ... to inquire into the fact." (See Legislative History, Deering's Ann. Pen. Code (1961 ed.) foll. § 1368, pp. 733-734.) Section 1368 codifies the common law rule precluding the trial of an incompetent defendant. (Comment, The Supreme Court of California 1972-1973 (1974) 62 Cal. L.Rev. 406, 495, 496, fn. 4 (Competence to Stand Trial).) As stated in Blackstone, "In criminal cases, ... idiots and lunatics are not chargeable for their own acts, if committed when under these incapacities: no, not even for treason itself." (2 Cooley's Blackstone (4th ed. 1899) p. 1230, italics added.)
[7] Section 6600 states in relevant part at subdivision (a)(3): "Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health." (Italics added.)
[8] The Florida courts have recognized that in proceedings under the Ryce Act, Florida's equivalent of the SVPA, a defendant has a due process right to be competent so as to be able to consult with counsel and to testify in his own behalf in cases in which the state relies on hearsay reports of prior bad acts that did not result in prosecution or conviction to establish its case. In re Commitment of Branch (Fla.Dist.Ct.App. 2004) 890 So.2d 322 (Branch) held "when the State relies on evidence of prior bad acts supported solely by unchallenged and untested factual allegations to establish any element of its case, the [defendant] has a due process right to be competent so that he or she may consult with counsel and testify on his or her own behalf. Thus, if the State's experts choose to rely on unchallenged hearsay to establish the [defendant's] prior uncharged bad acts, the [defendant] has a right to be competent so that he or she can exercise his or her due process right to challenge the facts underlying that hearsay evidence." (Id at p. 328, italics added.) Branch held the lower court abused its discretion in denying a motion for continuance of the proceeding until the defendant was competent to testify and assist his counsel. (Id. at p. 329; accord, In re Commitment of Camper (Fla.Dist.Ct.App. 2006) 933 So.2d 1271, 1275 ["the rationale of Branch applies to not only the untested hearsay evidence that was presented but also to the testimony at trial concerning untested factual allegations"].)
[9] Section 6600 states in relevant part at subdivision (c): "`Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."
[10] As noted in footnote 8, ante, Florida has recognized a defendant in a sexually violent predator commitment proceeding has a due process right to be competent in limited circumstances.
[11] Penal Code section 1368, pertaining to criminal proceedings, states in pertinent part: "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.... [¶] (b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369." (Italics added.) If the defendant "is found mentally competent, the criminal process shall resume, the trial on the offense charged shall proceed, and judgment may be pronounced." (Pen. Code, § 1370, subd. (a)(1)(A).) If the defendant "is found mentally incompetent, the trial or judgment shall be suspended until the person becomes mentally competent. [¶] (i) In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered ...." (§ 1370, subd. (a)(1)(B), italics added.)
[12] Code of Civil Procedure section 187 states: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Italics added.)
[13] We recognize Angeletakis held due process does not include the right to be mentally competent during a commitment extension hearing under Penal Code section 1026.5. (Angeletakis, supra, 5 Cal.App.4th at pp. 969-971.) However, the instant case is governed by the Supreme Court's recent decision in Allen, which prescribed a four-part template for determining what process is due in SVPA proceedings. (Allen, supra, 44 Cal.4th at pp. 862-863.)
[14] As noted in footnote 5, ante, the SVPA now provides for commitment for an indeterminate term.
[15] Hurtado, supra, 28 Cal.4th 1179, involved a claim of instructional error in an SVPA proceeding. Because an SVPA commitment involves a deprivation of liberty, Hurtado applied the rigorous Chapman standard of prejudice (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]) to conclude "the trial court's instructional error was harmless beyond a reasonable doubt." (Hurtado, at p. 1195.)
[16] The following discussion from People v. Moore (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], pointing out the similarities between the narcotic addict commitment statutes and criminal proceedings, is also instructive: "Although the commitment procedures set up by the narcotic addict statutes are civil in nature [citation], it is clear that the proceeding has some of the features pertinent to a criminal case in view of the facts that the state is the defendant's opponent, that the proceeding is commenced on petition of the district attorney (Welf. & Inst. Code, §§ 3100, 3100.6), that the defendant is entitled to be present at the hearing and to be represented by counsel at all stages of the proceeding (Welf. & Inst. Code, § 3104), that if he is financially unable to employ counsel he is entitled to appointed counsel (Welf. & Inst. Code, § 3104) and that his liberty is at stake. On the basis of these considerations, we have recognized the criminal features of the proceeding and held that persons involuntarily committed to the program have the right to a free transcript on appeal, a rule ordinarily applied in criminal cases. [Citation.]" (Id. at p. 681, italics added, overruled on other grounds in People v. Thomas, supra, 19 Cal.3d at p. 641, fn. 8.)